## IN THE UNITED STATE DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### WESTERN DIVISION

**RHONDA C. STEWART**                                                                 **PLAINTIFF**

**V.**                                              **4:05CV00032-WRW**

**DEPARTMENT OF INTERIOR**                                                  **DEFENDANT**

## ORDER

Pending is Defendant's Motion to Dismiss, or in the alternative, Motion for Summary Judgment.[1] Plaintiff, who is *pro se*, responded by  filing her own Motion for Summary Judgment,[2] and a Motion to Proceed to Trial.[3]  Defendant responded to Plaintiff's Motion.[4]

 Plaintiff brought suit alleging race discrimination and retaliation under Title VII.  In support of its Motion, Defendant argues that Plaintiff failed to exhaust her administrative remedies, and alternatively contends that Plaintiff cannot establish the *prima facie* elements for either claim.  For the reasons set out below, Defendant's Motion to Dismiss is DENIED, and its Motion for Summary Judgment is GRANTED.   Plaintiff's Motion for Summary Judgment is DENIED.

## I.      Background

In February 1998,  Plaintiff  Rhonda Stewart was hired by Laura Miller to work at the Central High School Museum that is located across the street from the school.  Although Plaintiff

---

[1]Doc. No. 30.

[2]Doc. No. 33.

[3]Doc. No. 41.

[4]Doc. No. 34.

and Ms. Miller began as employees of a private non-profit corporation, they eventually hired on with the National Park Service ("NPS") after it took charge of the museum.

Plaintiff became part of the NPS in February 2002.[5] Her position with the NPS was made possible through the Student Career Experience Program ("SCEP"). This program is available to individuals who, like Plaintiff, are pursuing a college degree in a relevant field.[6] SCEP employees are classified as student trainees rather than permanent employees. The program gives the agency an opportunity to train and observe the skills of the student and gives the student the opportunity to gain job experience.[7] While SCEP student trainees are not considered permanent employees, they have the opportunity for promotion,[8] and can become permanent employees if certain program requirements are met.[9] Plaintiff was never promoted or offered a permanent position.

Before filing her Equal Employment Opportunity ("EEO") charge, Plaintiff was advised that to advance to a permanent Park Ranger position, she must complete her degree, complete courses in computer fundamentals, and master the NPS operational procedures.[10] Although Plaintiff completed the course work for a Master's Degree in Public History, she had not yet completed or

----

[5]Defendant Ex. 12, p. 3; Defendant Ex. 5, p. 3.

[6]Defendant Ex. 3, p.4; Defendant Ex. 15.

[7]Defendant Ex. 15.

[8]Defendant Ex. 12, p. 9.

[9]Defendant Ex. 3, p. 6.

[10]Defendant Ex. 4, pp. 21 and 40; Defendant Exs. 11 and 14.

defended her thesis.[11]  Plaintiff also failed to complete the computer fundamentals courses or other

requisite projects necessary for advancement.[12]

Plaintiff approached an EEO counselor in April 2003 and filed an informal complaint against

her supervisor, Ms. Miller, alleging  that Ms. Miller had withheld benefits, training opportunities

and opportunities for promotion.[13] Ms. Miller and the NPS Superintendent, Mr. Michael Madell,

were made aware of the complaint on April 24, 2003.[14]  Plaintiff's formal complaint was filed on

May 29, 2003.[15]

After filing her EEO complaints, Plaintiff received written warnings on several occasions --

for abusing the dress code, smoking while on duty, reading the newspaper at work, and abusing sick

leave.[16]  In response to these disciplinary actions,  Plaintiff filed retaliation claims with the EEO on

June 25, August 18, and August 19, 2003.[17] Plaintiff was denied permanent status in June, and fired

on August 23, 2003.[18]

---

[11]Defendant Exs. 7 and 8.

[12]Defendant Ex. 14.

[13]Defendant Ex. 6.

[14]*Id.*

[15]Defendant Ex. 1, p. 1.

[16]Defendant Exs. 13, 17, 18, 19 and 21.

[17]*Id.* at p. 2.

[18]Defendant Exs. 13 (Notice of termination, dated August 19, 2003); Ex. 17 (disciplinary meetings with Plaintiff in July 2003); Ex. 18 (letter of warning issued July 16, 2003); Ex. 19 (disciplinary meeting on May 2003); Ex. 20 (disciplinary meeting August 6, 2003); Ex. 21 (disciplinary memo August 11, 2003).

The EEO office of the NPS began an investigation and issued its initial findings in a letter dated December 19, 2003.  The letter identified six discrimination claims, numbered 1(a) through 1(f), and twelve retaliation claims,  numbered 2 through 13.  The letter advised that the EEO office of the NPS would not make any further investigation of claims 1(a) through 1(f), and claims 3, 4, 5, 6, 7, 8, 10, and 11.  However, the letter noted that any final decision on the claims would be made by an Administrative Judge with the Equal Employment Opportunity Commission (" EEOC").[19] Four retaliation claims were accepted as viable enough to warrant investigation --  failure to offer Plaintiff a permanent position in June 2003, failure to provide mileage reimbursement, placing Plaintiff on administrative leave, and terminating her.[20]  These four claims were investigated and statements were taken in connection with the investigation in March 2004.[21]

The Plaintiff's claims were eventually brought to the EEOC on a Summary Judgment Motion filed by the NPS. A decision was issued on December 28, 2005, granting the agency's Motion.[22] The decision focused primarily on the four retaliation claims, but also addressed the discrimination claims.[23]  The decision reminded the EEO office of their obligation to advise Plaintiff of her right to file a "civil action in federal district court."[24]

---

[19]Defendant Ex. 1, p. 3.

[20]*Id.*

[21]Defendant Exs.4, 5 , and 12.

[22]Defendant Ex. 2.

[23]*Id.* at p. 9.

[24]*Id.* at p. 10.

## II.  Discussion

**A. Motion to Dismiss**

The Motion to Dismiss is based on an asserted failure to exhaust, and  failure to state a claim.  In support of its Motion, Defendant presents evidence outside of the pleadings.

If a court is asked to consider matters other than the pleadings, a Motion to Dismiss based on an allegation of failure to state a claim is treated as a Motion for Summary Judgment.[25] Therefore, Defendant's Motion to Dismiss contending that Plaintiff does not meet the legal standards for discrimination or retaliation will be treated as a Motion for Summary Judgment.

However, the Motion to Dismiss based on a failure to exhaust is properly analyzed under Fed. R. Civ. P. 12(b)(1) because it involves a question of jurisdiction. Exhaustion of administrative remedies is only a jurisdictional requirement when the case involves a federal employee.[26] Title VII specifically requires federal employees to exhaust their administrative remedies before filing suit in federal court.[27]  When a federal employee fails to exhaust her administrative remedies, the federal court is deprived of subject matter jurisdiction.[28]

A district court has the power to decide a Rule 12(b)(1) Motion to Dismiss on information that supplements the pleadings.[29] When the 12(b)(1) Motion to Dismiss is based on extrinsic evidence, the court is entitled to weigh the evidence presented and to make an

---

[25]*Carter v. Stanton*, 405 U.S. 92 (1972); *Gibb v. Scott*, 958 F.2d 814 (8th Cir. 1992).

[26] *Taylor v. Books A Million Inc.*, 296 F.3d 376 (5th Cir. 2002).

[27]*Brown v. General Service Administration*, 425 U.S. 820 (1976).

[28]*Jordan v. United States*, 522 F.2d 1128 (8th Cir. 1975).

[29]*Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.), *cert. denied*, 454 U.S. 897, 102 (1981).

independent factual determination regarding the existence of jurisdiction.[30] After reviewing the pleadings and additional information presented, I find that Plaintiff exhausted her administrative remedies.

A government employee can sue her employing agency for discrimination in federal court within 90 days of final agency action or after 180 days have passed from the filing of the formal agency EEO complaint.[31] However, if a plaintiff does not cooperate with the administrative process, then there will be no exhaustion, no matter how many days have passed.[32] If a plaintiff forces an agency to dismiss or cancel the complaint by failing to provide information that would enable the agency to investigate, she may not file a civil action.[33] The good faith effort to provide all relevant available information is all that exhaustion requires.[34]

Defendant argues that Plaintiff failed to exhaust her administrative remedies because she did not immediately challenge the agency's initial action of dismissing her discrimination claims and accepting four retaliation claims.  Defendant contends that Plaintiff's failure to appeal these EEO findings constitutes a failure to exhaust and deprives this Court of jurisdiction to consider the claims that the EEO declined to investigate.  I disagree.

---

[30]*Id.*

[31]42 U.S.C. § 2000e-16(c).

[32]*Jordan*, 522 F.2d at 1132-33; *Khader v. Aspin*, 1 F.3d 968, 971 (10th Cir. 1993); *Woodard v. Lehman*, 717 F.2d 909, 915 (4th Cir. 1983); *Johnson v. Bergland*, 614 F.2d 415, 417-18 (5th Cir. 1980).

[33]*Wilson v. Pena*, 79 F.3d 154 (D.C. Cir. 1996).

[34]*Wade v. Secretary of the Army*, 796 F.2d 1369, 1377 (11th Cir. 1986).

Plaintiff fulfilled her obligations.  She filed her charges in a timely fashion and cooperated with the investigating agency.  The EEO office of the NPS chose not to investigate certain claims filed by Plaintiff.  So, any failure to investigate was not caused by Plaintiff's conduct.

Finally, the letter sent to Plaintiff by the agency on December 19, 2003, reads: "The final decision regarding dismissal of claims number 1a, 1b, 1c, 1d, 1e, 1f, 3, 4, 5, 6, 7, 8, 10, and 11 will be made by the Administrative Judge, EEOC. . . ."[35]  The EEOC Administrative Judge entered the final decision over a year later on December 28, 2004.   Plaintiff had ninety days from that point to file her case in federal court, or she could have filed her case at anytime after180 days elapsed from May 29, 2003 (the date when she filed her charge).

**B. Motion for Summary Judgment:**

The remaining issues raised by Defendants will be considered under the summary judgment standard.

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds.[36]  The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[37]

---

[35]Defendant Ex. 1, p. 3.

[36]*Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed R. Civ. P. 56.

[37]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an extreme remedy that should only be granted when the movant has established a right to the judgment beyond controversy.[38]  Nevertheless, summary judgment promotes judicial economy by preventing trial when no genuine issue of fact remains.[39]  I must view the facts in the light most favorable to the party opposing the motion.[40]  The Eighth Circuit has also set out the burden of the parties in connection with a summary judgment motion:

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*,"[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact.  It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion.  Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue.  If the respondent fails to carry that burden, summary judgment should be granted.[41]

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.[42]

## 1.     Discrimination:

The applicable standard to measure the validity of a discrimination claim was established in *McDonnell Douglas Corp. v. Green*,[43] and involves a burden-shifting framework.[44]  "Under

---

[38]*Inland Oil & Transport Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

[39]*Id.* at 728.

[40]*Id.* at 727-28.

[41]*Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (*quoting City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)).

[42]*Anderson*, 477 U.S. at 248.

[43]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801-04 (1973).

[44]*Turner v. Gonzales*, 421 F.3d 688, 694 (8th Cir. 2005).

the *McDonnell Douglas* framework, a presumption of discrimination is created when the plaintiff meets [his] burden of establishing a *prima facie* case of employment discrimination. A minimal evidentiary showing will satisfy this burden of production."[45]  Once a plaintiff successfully establishes a *prima facie* case, the burden shifts to the employer to articulate "a legitimate, non-discriminatory reason for its adverse employment action."[46]  If the employer meets its burden, "the presumption of discrimination disappears, requiring the plaintiff to prove that the proffered justification is merely a pretext for discrimination."[47]  The plaintiff has the burden of persuasion at all times.[48]

To establish a *prima facie* case of discrimination, Plaintiff must show that: (1) she is a member of a protected class; (2) she met the legitimate expectations of her employer; (3) she suffered an adverse employment action; and (4) similarly situated employees that were not members of the protected class were treated differently.[49]  A minimal evidentiary showing will satisfy this burden of production.[50]

With regard to all her discrimination claims, Plaintiff did not meet the *prima facie* case. Plaintiff is a member of a protected class  --  African American.  However,  Plaintiff failed to offer evidence creating a reasonable inference that she met the legitimate expectations of her employer.  Plaintiff did not contest, nor did she offer any information to counter Defendant's

---

[45]*Davis v. KARK-TV, Inc.*, 421 F.3d 699, 704 (8th Cir. 2005).

[46]*Davis*, 421 F.3d at 704 (*quoting Williams v. Ford Motor Co.*, 14 F.3d 1305, 1309 (8th Cir. 1994)).

[47]*Davis*, 421 F.3d at 704.

[48]*Id.*

[49]*McDonnell Douglas*,  411 U.S. at 802-03; *see also Davis*, 421 F.3d at 703.

[50]*Id.*

assertions that she smoked in uniform, read newspapers at work, and wore jewelry in violation of the dress code.[51]

Plaintiff also did not offer enough evidence to create an inference that she suffered an adverse employment action as a result of discrimination, or that she was treated differently than similarly situated white employees.  "An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage. Termination, reduction in pay or benefits, and changes in employment that significantly affect an employee's future career prospects meet this standard."[52]   Plaintiff listed the following as adverse discriminatory actions: she was not informed that she did not have sufficient annual leave and  her request for a Government Purchase Card was delayed.   Clearly, these allegations do not meet the standard of an adverse employment action.   Her remaining discrimination claims include the allegations that, as compared to similarly situated white employees, she was not allowed to have flexibility to adjust her work schedule; she was not allowed to have access to computers, or to work in unsupervised conditions; she was monitored more closely; and was spoken to on a more formal level.

Plaintiff bears the burden to proffer specific tangible evidence that employees who were similarly situated in all respects to her received different treatment.[53]  A similarly situated employee is one who is not a member of a protected class and works under the same working environment as Plaintiff.[54]  Plaintiff cannot rely on conclusory statements to raise a genuine issue

---

[51]Doc. Nos. 34 and 41.

[52] *Sallis v. University of Minnesota*, 408 F.3d 470, 476 (8th Cir. 2005).

[53]*Philip v. Ford Motor Co.*, 413 F.3d 766, 768 (8th Cir. 2005).

[54]*Harvey v. Anheuser-Busch, Inc.*, 38 f.3d 968, 972-73 (8th Cir. 1994).

for trial.[55]   Outside her conclusory statements, Plaintiff does not offer any concrete evidence that she was treated in a discriminatory fashion when compared to white employees who were similarly situated in all respects.   In fine, Plaintiff's discrimination claims fail.

### 2. Retaliation

To establish a *prima facie* case of retaliation, Plaintiff must show (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) a causal connection between the protected activity and the adverse employment action.[56]   If the plaintiff presents a *prima facie* case of retaliation, the burden shifts to the employer to rebut the plaintiff's *prima facie* case by articulating a legitimate, nondiscriminatory reason for its adverse employment decision.[57]   If the employer successfully makes this showing, the burden shifts back to the plaintiff to present evidence that (1) creates a question of fact as to whether the employer's proffered reason was pretextual and (2) creates a reasonable inference that the employer acted in retaliation.[58]

Plaintiff failed to make out a *prima facie* case in three of the retaliation claims.   Plaintiff asserted that, in May 2002,  she was denied an opportunity to supervise and given a reduction in assignments and responsibilities.   Since these incidents took place *before* she filed her EEO charge, Plaintiff cannot show a causal connection between the protected activity and the adverse action.

---

[55]*Jeseritz v. Potter,* 282 F.3d 542, 545 (8th Cir. 2002).

[56]*Turner v. Gonzales*, 421 F.3d 688, 695-96 (8th Cir. 2005).

[57]*Rheineck v. Hutchinson Tech., Inc.*, 261 F.3d 751, 757 (8th Cir. 2001).

[58]*Logan v. Liberty Healthcare Corp.*, 416 F.3d 877, 880 (8th Cir. 2005).

Even if these two claims were considered discriminatory, rather than retaliatory, they would still fail, because Plaintiff contacted the EEO office almost a year after the incidents occurred.  Before a formal discrimination complaint can be filed, the complainant must first consult a counselor to try to resolve the matter informally.[59]  Such contact must be made within 45 days of the alleged discriminatory act or, in the case of a personnel action, within 45 days of its effective date.[60]  So, any allegations of illegal conduct (either discriminatory or retaliatory) that occurred in May 2002 have either not been exhausted or do not meet the *prima facie* standards for retaliation.

Plaintiff alleges that in retaliation for filing her charge, her request for mileage reimbursement was denied.  Again, this action does not meet the "adverse action" standard that is set out above.

Plaintiff makes out a *prima facie* case for the remaining retaliation claims which include allegations of  failing to make her a permanent employee, disciplining her, and terminating her. Such actions can be considered "adverse" since they significantly affected her employment status. "An unfavorable evaluation is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment."[61]  The disciplinary actions taken against Plaintiff were clearly the basis for her ultimate termination, and are therefore, considered adverse.

---

[59]29 C.F.R. § 1614.105(a).

[60]29 C.F.R. § 1614.105(a)(1).

[61]*Spears v. Missouri Department of Correction & Human Resources*, 210 F.3d 850, 854 (8th Cir. 2000).

All of these actions were taken after she filed her informal  EEO complaint, so an inference is raised that there is a causal connection between the protected activity and the adverse action.

However, Plaintiff has not offered sufficient evidence to refute Defendant's legitimate, nondiscriminatory reason for its adverse employment action.  As stated above, Plaintiff did not make an attempt to contradict the reasons that underlay Defendant's disciplinary actions.[62]  Moreover, a review of all the information reveals that Plaintiff's job prospects took a downward turn when Plaintiff and her supervisor, Ms. Miller, had a significant disagreement in November 2002 when Plaintiff wore jewelry to work.[63]

Finally, the undisputed evidence shows that Plaintiff displayed a negative attitude toward the Park Service and toward her supervisor, Ms. Miller, and was insubordinate.   Plaintiff admitted that during the November 2002 meeting with Ms. Miller, she walked out of the room: "I bought the necklace and I was explaining to her that I had made an oversight.  I apologized and said that I would correct the situation.   She did not let that rest.  She continued to badger me verbally.  I told her no, I did not want any part of this conversation and I walked out of the room."[64] Further, Defendant offered the testimony of Superintendent Madell that Plaintiff admitted "she didn't give a damn about the Park Service."[65] Finally, an e-mail written by

---

[62]*Berg v. Bruce*, 112 F.3d 322 (8th Cir. 1997) (awarding summary judgment to employer when employee failed to off proof to undermine the employer's overwhelming evidence of a legitimate basis for the discharge).

[63]Defendant Ex. 4, p. 55; Defendant Ex. 5, p. 14-15.

[64]Defendant Ex. 5, p. 14-15.

[65]Defendant Ex. 4, p. 16.

Plaintiff demonstrates her hostility toward Ms. Miller.[66] An employee's negative attitude toward supervisors and co-workers are legitimate, nondiscriminatory reasons for taking an adverse employment action.[67]

Here, the undisputed evidence shows that Plaintiff was not offered a permanent position, was disciplined, and eventually terminated because she constantly disobeyed the rules, was insubordinate, and had a bad attitude toward the Park Service and her supervisors.

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED this 2nd day of March, 2006.


<u>/s/ Wm. R.Wilson,Jr.</u>
UNITED STATES DISTRICT JUDGE

---

[66]Defendant Ex. 4, p. 47.

[67]*Larry v. Potter*, 424 F.3d 849 (8th Cir. 2005).